William P. TODD and Diana J. Todd, on their own behalf and as next friends for their son, William Matthew Todd, Steve Hammons, et al., Plaintiffs–Appellants,

v.

RUSH COUNTY SCHOOLS and Ed Lyskowinski, in his official capacity as Superintendent of the Rush County Schools, Defendants–Appellees.

No. 97–2548.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1997.

Decided Jan. 12, 1998.

Before CUMMINGS, MANION and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

This suit was filed by four parents and as next friends for their four children, all students at Rushville Consolidated High School in Rushville, Indiana. In August 1996, the Rush County School Board approved a program prohibiting a high school student from participating in any extracurricular activities or driving to and from school unless the student and parent or guardian consented to a test for drugs, alcohol or tobacco in random, unannounced urinalysis examinations. Extracurricular activities include athletic teams, Student Council, Foreign Language Clubs, Fellowship of Christian Athletes, Future Farmers of America Officers and the Library Club. When consent for testing is

given, participation in the extracurricular organizations or driving to and from school are permitted. The testing is conducted by Midwest Toxicology Services, which collects the samples, and the Witham Hospital Laboratory Services, which performs the analyses. The $30 test is paid for by a grant.

If a test result is positive, the student and family are informed and permitted to explain the result by showing, for example, that the student is taking a medication that would influence the result. Without a satisfactory explanation, the student is barred from extracurricular activities or driving to and from school until passing a retest. However, a positive test result is not to be used in school discipline proceedings. If a student tests positive, the student and his or her parents will be given the names of agencies that might assist the student's recovery. Also if a student tests positive, he or she may request a new urine test. Otherwise the student may be retested after an appropriate interval but will continue to be barred from extracurricular activities and driving to and from school until testing negative.

This program concerns random suspicionless testing. The high school does reserve the right to test any student if it has reasonable suspicion of drug use. If a student tests positive twice, the school is deemed to have reasonable suspicion justifying further retests even though the student will no longer be permitted to engage in any extracurricular activities due to the prior positive results. Tests based on reasonable suspicion, unlike the suspicionless tests, do subject the student to school discipline.

This case was initiated by the students' and parents' complaint and activated by their motion for summary judgment which was denied. In turn, the defendants Rush County Schools and its superintendent filed a motion for summary judgment, which was subsequently granted.

When the summary judgment motions were filed in the trial court, random tests had been performed on five or six occasions involving 20 to 30 students each time. Five to eight students tested positive, three or four

for marijuana and the rest for nicotine. From 1992 to 1997 there were no alcohol related expulsions, zero to one tobacco-related expulsion per year, and one to four drug-related expulsions. Expulsions are not involved in the rule being challenged here. As to suspensions, there were two to nine for alcohol, 21 to 44 for tobacco, and one to nine for drugs.

A 1994 survey of Rush County high school students was conducted by the Indiana Prevention Resource Center and disclosed that cigarette use for Rush County 10th graders was higher than the Indiana average and that alcohol use for 11th and 12th graders was also higher than the state average. Marijuana usage was lower for 9th and 12th graders than the state average. Two witnesses stated that drug use has been increasing at the high school, causing the drowning of a senior and an automobile crash where the students were inhaling the contents of aerosol cans.

As the opinion below reveals, there were 950 students in the Rush County High School for the 1996–1997 school year. Seven hundred twenty-eight agreed to sign with the drug testing program. Of those, 170 did not participate in extracurricular activities (including athletics) or drive to and from school. Plaintiff William Todd's parents refused to sign a consent form for the drug testing program, resulting in his being barred from videotaping the football team. Likewise, the parents of the three plaintiff Hammons children refused to sign the consent form and the children are therefore barred from participating in any extracurricular activities. One of the Hammons children had been a member of the Library Club and another a member of the Future Farmers of America.

The issue before this Court is whether Rush County Schools' drug testing program under which all students who wish to participate in extracurricular activities must consent to random and suspicionless urine testing for alcohol, unlawful drug, and cigarette usage violates the Fourth Amendment rights of those students.[1] For the following rea-

---

1. As previously noted, the drug testing program at Rush County High School also required that

students who were driving to and from school be subject to random, suspicionless testing. Be-

sons, we hold that Rush County Schools' drug testing program is consistent with the Fourth Amendment.

The outcome of this case is governed by *Vernonia School District 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564, and *Schaill v. Tippecanoe County School Corp.*, 864 F.2d 1309 (7th Cir.1988).[2] Those cases upheld random urinalysis requirements for students who participate in interscholastic athletics. As in those cases, the testing policy was undertaken in furtherance of the school districts' "responsibilities, under a public school system, as guardian and tutor of children entrusted to its care."[3] 515 U.S. at 665, 115 S.Ct. at 2396. Noting that "Fourth Amendment rights * * * are different in public schools than elsewhere," *id.* at 656, 115 S.Ct. at 2392, the Supreme Court in *Vernonia* determined that deterring drug use by students was a compelling interest, finding that "[s]chool years are the time when the physical, psychological, and addictive effects of drugs are most severe." *Id.* at 661, 115 S.Ct. at 2395.

As defendants explained, similar to the program in *Vernonia*, their program was designed to deter drug use and not to catch and punish users. The difference between the cited cases and the present one is that here the testing is also required of those engaging in other extracurricular activities. However, we find that the reasoning compelling drug testing of athletes also applies to testing of students involved in extracurricular activities. Certainly successful extracurricular activities require healthy students. While the testing in the present case includes alcohol and nicotine, that is insufficient to condemn it because those substances may also affect students' mental and physical condition.

Additionally, while recognizing that extracurricular activities "are considered valuable to the school experience, and [that] participation may assist a student in getting into college," the district judge noted that extracurricular activities, like athletics, "are a privilege at the High School" (Op.9). In *Schaill*, this Court found significant "the fact that [the] plaintiffs are required to submit to random drug testing only as a condition of participation in an extracurricular activity," in that case athletics. *Schaill*, 864 F.2d at 1319. Similar to *Schaill* and *Vernonia*, the Rush County Schools' drug testing program applies only to students who have voluntarily chosen to participate in an activity. As the district court also noted, students in other extracurricular activities, like athletes, "can take leadership roles in the school community and serve as an example to others" (Op.14). As this Court has reasoned, "[p]articipation in interscholastic athletics is a benefit carrying with it enhanced prestige and status in the student community" and thus "[i]t is not unreasonable to couple these benefits with an obligation to undergo drug testing." *Schaill*, 864 F.2d at 1320. Therefore it is appropriate to include students who participate in extracurricular activities in the drug testing.

The linchpin of this drug testing program is to protect the health of the students involved. As we have stated, "[t]he plague of illicit drug use which currently threatens our nation's schools adds a major dimension to the difficulties the schools face in fulfilling their purpose—the education of our children. If the schools are to survive and prosper, school administrators must have reasonable means at their disposal to deter conduct which substantially disrupts the school environment." *Schaill*, 864 F.2d at 1324. We conclude that Rush County Schools' drug

cause the plaintiffs in this case were all students who wished to participate in extracurricular activities without having to consent to random, suspicionless drug testing, this Court expresses no opinion as to whether the aspect of the drug testing program which requires students who are driving to and from school to consent to drug testing is constitutional.

**2.** In *Schaill*, the urine testing program involved both athletes and cheerleaders.

**3.** The Supreme Court stated that "[c]entral, in our view, to the present case is the fact that the subjects of the Policy are (1) children, who (2) have been committed to the temporary custody of the State as schoolmaster." *Id.* at 654, 115 S.Ct. at 2391. "When parents place minor children in private schools for their education, the teachers and administrators of those schools stand in loco parentis over the children entrusted to them. In fact, the tutor or schoolmaster is the very prototype of that status." *Id.*

testing program is sufficiently similar to the programs in *Vernonia* and *Schaill* to pass muster under the Fourth and Fourteenth Amendments.

Judgment Affirmed.